IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>JOSE PACHECO-MONTEMOINO<br><br>Defendant | **CRIM NO.** 15-370(RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court are Defendant Jose Pacheco-Montemoino's ("Defendant" or "Pacheco-Montemoino") *Motion to Reduce Sentence Pursuant to the Compassionate Release Statute 18 U.S.C. § 3582 (C)(1)(A)(I)* ("*Motion for Compassionate Release*") and *Supplemental Motion to Reduce Sentence Pursuant to the Compassionate Release Statue 18 U.S.C. § 3582 (C)(1)(A)(I)* [sic] ("*Supplemental Motion*"). (Docket Nos. 121 and 123). For reasons set forth below, the pending motions are **DENIED WITHOUT PREJUDICE**.

I.   PROCEDURAL BACKGROUND

On October 19, 2021, Defendant filed an initial *Motion for Compassionate Release*, followed by a *Supplemental Motion* on November 15, 2021. (Docket Nos. 121 and 123). In his initial motion, Pacheco-Montemonio alleged that his health conditions, including asthma, diabetes, high blood pressure, blood clots,

Case 3:15-cr-00370-RAM   Document 143   Filed 03/28/22   Page 2 of 11

Criminal No. 15-370 (RAM)                                                      2

legal blindness and having suffered a stroke and a heart attack meet the extraordinary and compelling reasons prong for compassionate release under 18 U.S.C. § 3582. (Docket No. 121 at 2-4, 9). Specifically, he claims that because of his blindness caused by his diabetes, he cannot care for himself at his current institution, FCI Williamsburg in South Carolina. Id. at 3. Mr. Pacheco-Montemoino also asserts that the lack of translators at his facility limits his access to proper healthcare. Id. at 1. Moreover, he contends his health conditions increase his risk of contracting COVID-19, which also constitutes a compelling reason warranting release. Id. at 9-13. Lastly, Defendant asserts he is no longer a danger to the safety of others or the community, as exemplified by his prior compliance with the conditions of his pretrial release and due to his medical conditions. Id. at 9.

Defendant's *Supplemental Motion*, in turn, reiterates that because he is a "blind diabetic patient," he struggles to adapt to life behind bars and requires constant help to perform daily activities. (Docket No. 123 at 1). He informs the Court that he suffered a second stroke in November 2021 and was found unconscious in his cell. Id. at 2. Finally, he contends the Federal Bureau of Prisons ("BOP") fails to provide his prescribed medications on a regular basis or as indicated by physicians. Id.

On November 24, 2021, the United States of America ("the Government") opposed Defendant's petition on the grounds that,

despite Pacheco-Montemoino's medical conditions and the absence of danger posed by his release, he lacks an extraordinary and compelling reason warranting release. (Docket No. 127 at 8). The Government alleges Defendant did not justify his release by not providing evidence of prior administrative requests nor corroborative evidence of some of his claimed medical conditions such as past blood clots, heart attack, and stroke. Id. at 1, 6. The Government also alleges that Pacheco-Montemoino did not prove how his "blindness results in an inability to provide self-care." Id. at 7. Lastly, the Government avers the BOP is taking the necessary measures to contain COVID-19 at FCI Williamsburg. Id. at 8.

On January 18, 2022, Defendant replied to the Government's opposition showing that on August 10, 2021, he filed an administrative request for compassionate release with the Warden of FDC Miami, where he was housed at the time, and which allegedly has not been answered. (Docket No. 139 at 2; 139-1). Further, Pacheco-Montemoino states that his blindness, standing alone, meets the criteria for extraordinary and compelling reasons as it is a serious medical condition which causes functional impairment. (Docket No. 139 at 4). Defendant also provided evidence of his multiple medical conditions and treatments while incarcerated. (Docket No. 139-2–139-4).

On January 20, 2022, the Government filed a sur-reply reasserting that denial of Defendant's compassionate release motion was proper given that he failed to establish a "particularized susceptibility and risk of contracting COVID-19." (Docket No. 142 at 1). Plaintiff claims the fact that Defendant is vaccinated, combined with the current conditions at FCI Williamsburg, weigh against a finding that Defendant has an increased risk of contracting COVID-19. Id. The Court agrees.

## II. ANALYSIS

This Court denies Mr. Pacheco-Montemoino's request for two reasons. First, because he fails to present extraordinary and compelling circumstances justifying release. Second, he has not evinced he no longer poses a danger to society if released.

Typically, a court cannot modify an imprisonment term once imposed. *See* 18 U.S.C. § 3582(c). But it may grant compassionate release to a defendant subject to certain requirements. Id. § 3582(c)(1)(A). Prior to the passage of the First Step Act in 2018, compassionate release could only be granted upon motion by the Director of the BOP. *See* United States v. Saccocia, 10 F.4th 1, at 3 (1st Cir. 2021). The First Step Act made it possible for defendants to file a motion for compassionate release if they first apply to the BOP. Id. at 4.

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may not modify a final sentence unless a defendant has "fully exhausted all

administrative rights to appeal a failure of" the BOP to bring a motion for reduction of sentence on his behalf *or* if thirty (30) days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Even so, there **must still be** "extraordinary and compelling reasons" warranting a reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Per First Circuit precedent, extraordinary and compelling reasons are "(A) medical reasons; (B) age; (C) family circumstances; and (D) '[o]ther [r]easons[.]'" Saccoccia, 10 F.4th at 7 (quoting U.S.S.G § 1B1.13).

After Saccocia, the First Circuit tackled a question left unanswered regarding whether District Courts were bound by the Sentencing Guidelines Policy Statement or measures for compassionate release. In United States v. Ruvalcaba, the First Circuit held that "district courts – when adjudicating prisoner-initiated motions for compassionate release – have discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." United States v. Ruvalcaba, 2022 U.S. App. LEXIS 4235, at *18 (1st Cir. 2022) (citation omitted). However, this does not mean that a district court's discretion is unbound, as courts "remai[n] circumscribed by statutory standards which require reasons that are both 'extraordinary and compelling.'" Id. (citing United States v. Canales-Ramos, 19 F.4th 561, 566 (1st Cir. 2021)). Thus,

the Court reviews the entirety of the record to determine whether Defendant has established extraordinary and compelling reasons for a sentence reduction. *See* United States v. Salinas, 2021 WL 59197786, at *2 (D.P.R. 2021).

Defendant provided evidence of his filing of a request for compassionate release with the Warden of FDC Miami and that more than thirty days had elapsed since said filing. (Docket Nos. 139 at 2; 139-1). Nevertheless, he still failed to present circumstances warranting release. Although the medical records provided by Defendant substantiate his claims that he suffers from serious medical conditions, the records also reflect that they are being managed and treated by the medical staff at his facility. (Docket No. 139-2).

**A. Defendant's blindness does not justify release**

Defendant's allegations that he is unable to care for himself in a prison environment due to his blindness, is at an increased risk of contracting COVID-19 and has limited access to proper healthcare due to a lack of translators is not borne by the record before this Court. Further, even in situations where a court has found that blindness can be a compelling reason, additional factors must also be present. *See e.g.,* United States v. Roman, 2021 WL 3173351, at *4-5 (S.D. Ohio 2021); United States v. Willis, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (finding that a blind inmate who was wheelchair bound, required twenty-four-hour care, and was

given at most eighteen months to live showed extraordinary circumstances warranting release but denying the request due to the severity of his crime).

Like the defendant in Roman, Mr. Pacheco-Montemoino states he is not treated properly for his medical conditions. (Docket No. 139 at 8-10). Nevertheless, unlike in Roman, the medical records proffered by Pacheco-Montemoino document that he is receiving adequate medical care. First, regarding Defendant's blindness, the Court notes that Defendant lost his sight in 2019 after a bilateral retinal detachment, *i.e.* **before** he voluntarily surrendered to BOP's custody on May 3, 2021. (Docket Nos. 121 at 4; 139-2 at 184). The medical records also evince that he received multiple ophthalmologic follow ups in May, September, and November 2021. (Docket Nos. 139-2 at 13-14, 42-43, and 184; 139-4 at 60). Hence, Defendant is being treated regularly and his blindness, standing alone, is insufficient to merit compassionate release.

**B. Defendant's other medical issues do not justify release**

Defendant's medical records also show he is receiving medical attention for other health conditions in addition to blindness. (Docket No. 139-2 at 83-129). Pacheco-Montemoino's medications for diabetes, glaucoma, hypertension, tachycardia, kidney disease, and lower back pain have been consistently renewed. (Docket Nos. 139-2 at 16, 19, 22, 25, 33-34, 54-60, 91-92, 101-102, 186; 139-4 at 193-201, 205-212). Lab work has been performed and discussed with

him by the medical staff at his facility as recently as September and October 2021. Another clinical note indicates that he had an EKG completed in November 2021. (Docket No. 139-4 at 153). It is worth noting that Defendant's medical records also reveal he has refused medication in the past. Specifically, there was an instance in which Pacheco-Montemoino left the medical area without taking his insulin medication after he refused to administer it himself or have facility personnel administer it. (Docket No. 139-2 at 39). This further counsels against a finding of compassionate release. *See e.g.*, United States v. Colmenares Fierro, 2021 WL 2806942, at *6 n. 6 (E.D. Tex. 2021) (finding that a defendant's refusal to take treatment for tuberculosis "preclude[d] him from relying on [that] condition as a basis for compassionate release").

**C. COVID-19 does not justify release**

At the time of the filing of the compassionate release motion and subsequent replies and oppositions, Mr. Pacheco-Montemoino was being held at FCI Williamsburg in Salter, South Carolina where there were **zero (0) confirmed cases** of COVID-19 among a total of 1,607 inmates and **zero (0) cases** among the staff.[1] Notably, **1,519 inmates** at FCI Williamsburg, roughly 95% of the inmate population,

---

[1] *See Covid-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp and *FCI Williamsburg*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/wil/ (last visited on March 28, 2022).

were fully vaccinated.[2] Therefore, it appears the spread of COVID-19 at FCI Williamsburg is presently under control. *See* United States v. DeBerry, 2020 WL 7395356, at *6 (W.D.N.Y. 2020) (denying a compassionate release motion because even though USP Canaan was in a COVID-19 outbreak with 45 inmates and 18 staff, the defendant had not shown the BOP was "ignoring the outbreak or unable to treat him if he contract[ed] the virus."); *see also* United States v. Hahn, 2021 WL 3051867, at *5 (S.D. Ind. 2021) (noting that the defendant's chances of contracting COVID-19 have significantly decreased due to the reduced COVID-19 statistics at FCI Williamsburg and that 60% of the inmates were inoculated).[3]

As a final note, Defendant was vaccinated with the Janssen vaccine. (Docket No. 133 at 1). As a result, Pacheco-Montemoino's inoculation status further undermines the argument that his health conditions amount to extraordinary and compelling circumstances meriting release. *See* United States v. Solans, 2021 WL 4776631, at *2 (D. Mass. 2021) (denying compassionate release because defendant was vaccinated and because "[t]he FDA has concluded

---

[2] Id.

[3] The Court notes that the BOP's Inmate Locator now places Mr. Pacheco-Montemoino (Register Number 45585-069) at MCFP Springfield in Springfield, Missouri. *See Find an inmate.*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 28, 2022). This does not alter the Court's conclusion that compassionate release is uncalled for as Springfield MCDFP has zero (0) inmates, out of 935 total inmates, and zero (0) staff with COVID-19. *See Covid-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp and *MCFP Springfield*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/spg/ (last visited on March 28, 2022).

through extensive testing that the Johnson & Johnson vaccine is highly effective in preventing infection and severe disease.").

### D. Defendant has not shown he is not a danger to society

The Court is also not convinced that Defendant is no longer a danger to society. Beyond stating that he previously complied with all the pre-trial conditions of release for almost six (6) years prior to voluntarily surrendering and that his health conditions will **most likely** keep him between his home and medical appointments for the "foreseeable future – if not for the rest of his life," Defendant did not prove that he is not a danger to society. (Docket No. 121 at 9). While the Court sympathizes with Defendant's multiple health conditions, he has not placed the Court in a position to conclude whether he would pose a danger to the safety of others or the community.

Moreover, Defendant was originally charged with possession with intent to distribute a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1) ("Count 1") and possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 2"), each of which carries a 5-year minimum sentence. (Docket Nos. 12; 88 at 4 and 10). Count 1 of the Indictment was ultimately dismissed, and Defendant was only sentenced to Count Two of the Indictment, which he had previously pled guilty to on May 28, 2019. (Docket Nos. 85, 87 and 94-95). Mr. Pacheco-Montemoino is scheduled for release on July 29, 2025.

(Docket No. 121 at 4). At least at the time of the filing of his *Motion for Compassionate Release*, Defendant conceded he had served only approximately 10% of his sentence. Id. Thus, a sentence reduction at this time would not properly reflect the seriousness of his offense, promote respect for the law, or provide the adequate deterrence to criminal conduct required under 18 U.S.C. § 3553. *See* Salinas, 2021 WL 59197786, at *2.

### III. CONCLUSION

Given that extraordinary and compelling circumstances are lacking, Defendant Jose Pacheco-Montemoino's *Motion to Reduce Sentence Pursuant to the Compassionate Release Statue 18 U.S.C. § 3582(C)(1)(A)(I)* and *Supplemental Motion to Reduce Sentence Pursuant to the Compassionate Release Statue 18 U.S.C. § 3582 (C)(1)(A)(I)* (Docket Nos. 121 and 123) are **DENIED WITHOUT PREJUDICE**.

In San Juan, Puerto Rico, this 28th of March 2022.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge